UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOMINIC AGUERO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 08-cv-6689 |
| v. ) | |
| ) | Judge John W. Darrah |
| CITY OF CHICAGO, ) | |
| OFFICER WILLIAM WALKER, ) | |
| OFFICER SEAMUS SCANNELLI, ) | |
| and JOHN DOE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Dominic Aguero, filed an Amended Complaint against Defendants, City of Chicago, Officer William Walker, Officer Seamus Scannelli, and John Doe, asserting 42 U.S.C. §1983 claims of excessive force, failure to intervene, false arrest, false imprisonment, and battery, and also claiming a right to indemnification under Illinois law. Presently before the Court is the Defendants' Motion to Dismiss Count III of Aguero's Amended Complaint for false arrest, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendants' Motion is denied.

### BACKGROUND

The following facts are taken from Aguero's Amended Complaint and are accepted as true for purposes of resolving this Motion to Dismiss. On or about March 24, 2008, Aguero entered the Tenth District Police Station to report that his license plates had been stolen and began speaking with Officer Scannelli. (Am. Compl.

¶¶ 8-9.) Officer Walker, also in the station, questioned Aguero's assessment that his plates where stolen and additionally inquired if Aguero had any outstanding tickets related to his vehicle. (Am. Compl. ¶ 12.) When Officer Walker said, "You know you ain't getting out of paying for your tickets," Aguero responded that getting out of his tickets was not his intention and that he only wanted to report his license plates stolen. (Am. Compl. ¶ 14.) Officer Walker repeated that Aguero would not get out of paying for his traffic tickets and that he could not be fooled by Aguero's "Latin King gang banging bullshit." (Am. Compl. ¶ 16.) Aguero is not a Latin King. (Am. Compl. ¶ 29.) Aguero then requested Officer Walker's badge number. (Am. Compl. ¶ 17.) Officer Walker became extremely angry and refused to provide it. (Am. Compl. ¶ 17.) Aguero asked if he was going to get assistance from Officers Walker and Scannelli, and they responded in the negative. (Am. Compl. ¶ 19.) When Aguero began to exit the police station, Officer Walker began to follow him through the same exit. (Am. Compl. ¶ 20.)

Upon exiting the station, Aguero walked in the opposite direction of his parked car in an attempt to locate a pay phone to call 911 and report the conduct of Officers Walker and Scannelli. (Am. Compl. ¶ 21.) Officer Walker followed Aguero out of the station and approached Aguero's parked car while Officer Scannelli and another unidentified officer ("Officer Doe") exited behind him. (Am. Compl. ¶¶ 22-23.) Officer Walker yelled at Officer Scannelli and Officer Doe to apprehend Aguero, at which point the two officers began running toward him. (Am. Compl. ¶ 24.) When the two pursuing officers reached Aguero, Officer Scannelli grabbed him by the arm while Officer Doe kneed him in the abdomen and face; Officer Scannelli then slammed him to

the ground and placed handcuffs on him. (Am. Compl. ¶ 25.) Officers Scannelli and Doe then lifted Aguero to his feet and escorted him back to the police station. (Am. Compl. ¶ 26.) Aguero asked the officers why he was being detained, and Officer Walker stated that they had to conduct an investigation in regards to his vehicle and that he was writing some tickets in relation to his vehicle. (Am. Compl. ¶ 27.)

When in the police station, Officer Walker grabbed Aguero by the back of the neck and walked him into a room, where he began choking him and punching him in his face and abdomen. (Am. Compl. ¶ 30.) At this point, Aguero was still handcuffed and unable to defend himself. (Am. Compl. ¶ 31.) Officers Scannelli and Doe stood by and watched Officer Walker beat and torture Aguero without acting to stop him. (Am. Compl. ¶ 32.) When Officer Walker stopped, Aguero requested an ambulance; Officer Walker walked out of the room, ignoring the requests. (Am. Compl. ¶ 33-34.) Aguero told Officer Doe that he was having trouble breathing, had a bad headache, and had chest pains. (Am. Compl. ¶ 35.) When Aguero persisted in requesting medical attention, he was taken to another room in the station and booked for battery – an offense he contends he did not commit. (Am. Compl. ¶ 37.)

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint." *Christensen v. County of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004).

Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, the complaint must describe the claim in sufficient detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 569 n.14). The plaintiff must provide more than bare "recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## ANALYSIS

Defendants move to dismiss only Count III, which purports to state a claim for false arrest. Defendants argue that Plaintiff's False Arrest Claim is duplicative of his False Imprisonment Claim and, therefore, that it cannot be a separate basis for relief under § 1983. Specifically, Defendants argue that allegations of false arrest and false imprisonment alleged within the same causal course of detainment merge into one distinct § 1983 violation constituting false imprisonment and that a finding of probable cause at the time Aguero was apprehended outside of the police station would defeat both claims.

Defendants primarily rely on the Supreme Court's analysis in *Wallace v. Kato*, 549 U.S. 384, 389 (2007) (*Wallace*), which acknowledged that claims of false arrest and false imprisonment overlap and are often considered together as one claim involving an unlawful detention. In *Wallace*, the Court sought to determine the accrual date of the plaintiff's § 1983 state-law false imprisonment claim in order to determine when the forum state's statute of limitations barred the initiation of the action. *See id.* at 387-88. Although the *Wallace* Court stated that the two torts "overlap," *see id.* 549 U.S. at 389, the Court did not hold that a complaint alleging false imprisonment cannot also include a claim for false arrest.

In order to prevail on a claim for false arrest by means of an unlawful seizure under the Fourth Amendment, Aguero must establish that the Government's conduct constituted a seizure and that the seizure was unreasonable. *Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir. 2009). Under the Fourth Amendment, a person is seized "only if, in view of all circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Tom v. Voida*, 963 F.2d 952, 956-57 (7th Cir. 1992) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

Similarly, a detention may rise to the level of false imprisonment if it is significant enough to inhibit an individual's constitutional liberties. *See Albright v. Oliver*, 975 F.2d 343, 346 (7th Cir. 1992). "A § 1983 false imprisonment claim seeks damages for injury caused by the plaintiff's detention without probable cause." *National Casualty Company v. McFatridge*, 604 F.3d 335, 344 (7th Cir. 2010).

5

Although the claims are similar, Aguero alleges a separate set of facts to support each of the two claims. He alleges that his detention following his attempt to exit the police station constitutes false imprisonment and that his subsequent arrest on false charges of battery constitutes a false arrest. Accepting Aguero's allegations as true at this stage in the litigation, it is plausible that the initial detention and confinement of Aguero at the police station constituted a constitutional violation that is separate and distinct from Aguero's subsequent arrest on false charges.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Count III is denied.

Date: June 30, 2010

JOHN W. DARRAH
United States District Court Judge